1  Jeff Silvestri (NSBN 5779)
   Jane Susskind (NSBN 15099)
2  McDONALD CARANO LLP
   2300 West Sahara Avenue, Suite 1200
3  Las Vegas, Nevada 89102
   Telephone: (702) 873-4100
4  Facsimile: (702) 873-9966
   jsilvestri@mcdonaldcarano.com
5  jsusskind@mcdonaldcarano.com

6  *Attorneys for Defendant Anthony Fanticola*

7

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10  BRIAN C. PADGETT, an Individual,          CASE NO.:   2:21-cv-01388-RFB-EJY

11                 Plaintiff,

12  v.                                         **EMERGENCY MOTION TO CANCEL
                                                AND/OR EXPUNGE LIS PENDENS**
13  ANTHONY FANTICOLA, an Individual,
    DOE DEFENDANTS I-X, and DOE
14  ENTITIES I-X,

15                 Defendants.

16

17

18        Defendant Anthony Fanticola ("Defendant" or "Fanticola"), by and through his

19  undersigned counsel, hereby moves under NRS 14.015 to cancel and/or expunge the Notice of Lis

20  Pendens recorded by Plaintiff Brian C. Padgett ("Plaintiff" or "Padgett"). **Fanticola also requests**

21  **under NRS 14.015 that the Court order a hearing as soon as practicable and upon 15 days'**

22  **notice to Padgett for the purpose of taking evidence and argument regarding this motion**.

23  Fanticola bases this motion on the pleadings and papers on file, the declarations and exhibits

24  attached hereto, and the oral arguments presented at the requested hearing.[1]

25  ///

26  ///

27

28  ─────────────────────
    [1] Fanticola brings this motion on an emergency basis, seeking urgent relief from this Court. (*See*
    Declaration of Jeff Silvestri ("Silvestri Decl.") ¶ 3.)  Fanticola has satisfied the requirements of
    Local Rule 7-4, as further outlined in the Declaration of Jeff Silvestri. (Silvestri Decl. ¶¶ 3-6.)

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3        Brian Padgett wanted to borrow $2,000,000 from Anthony Fanticola, and to do so, signed

4 a Loan Agreement with a personal guaranty that included a Deed of Trust to an office building

5 located at 611 South 6th Street, Las Vegas, Nevada 89101 ("Property").  Padgett defaulted on the

6 loan, so Fanticola lawfully foreclosed on the Property.  Padgett now appears to seek, via this

7 lawsuit, to invalidate that foreclosure sale for an alleged lack of notice under NRS Chapter 107

8 and has filed a notice of lis pendens.  But Padgett cannot meet his burden under NRS 14.015 to

9 show that the lis pendens is valid.  Padgett has no ownership interest in the property.  His

10 Complaint, which fails to allege that a contract exists, does not affect the title or possession of the

11 property.  And while Padgett filed the Complaint on July 26, 2021, he still has not served

12 Fanticola, calling into question his motives for initiating this litigation.  As Fanticola will

13 demonstrate in this motion and throughout this action, Padgett was not entitled to notice, and even

14 if he were, Fanticola complied with the statutory requirements for notice and any alleged defect

15 does not void the foreclosure sale.  Padgett therefore cannot prove that he is likely to succeed on

16 the merits or has a fair chance of success, as NRS 14.015 requires.

17        The Court should therefore grant this Motion to Cancel and/or Expunge Lis Pendens

18 ("Motion to Expunge") to remove the improper and unjustified cloud on Fanticola title.

19 **II.    FACTUAL BACKGROUND**

20        Fanticola loaned Padgett $2,000,000 pursuant to a Loan Agreement and Promissory Note.

21 Padgett, in his individual capacity, signed both as the borrower.  (Declaration of Anthony

22 Fanticola ("Fanticola Decl.") ¶ 3; *see also* Ex. A, Loan Agreement and Promissory Note.)  Despite

23 signing the Promissory Note in his individual capacity, Padgett also agreed to personally guarantee

24 the Loan, pursuant to a Guaranty Agreement that he signed.  (Fanticola Decl. ¶ 4; *see also* Ex. B,

25 Guaranty Agreement.)  The entity that owned the Property, 611 S. 6th Street, LLC ("611 South"

26 or "Property Owner"), also signed the Promissory Note as a co-debtor.  The Property Owner gave

27 Fanticola a Deed of Trust to secure "[p]erformance of the certain agreement between

28 [Property Owner] and [Fanticola]" and "[p]ayment of the indebtedness evidenced by the certain

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1  agreement . . . in the principal sum of [$2,000,000]." (Fanticola Decl. ¶ 5; *see also* Ex. C, Deed

2  of Trust.)

3      On March 4, 2017, Fanticola notified Padgett and the Property Owner of his election under

4  Section 2(c)(ii) of the Loan Agreement to receive "Loan Debt Repayment" on or before May 3,

5  2017 ("Demand for Payment"). (Fanticola Decl. ¶ 6; *see also* Ex. D, Demand for Payment.) On

6  or about May 3, 2017, Padgett defaulted on the loan by failing to make the required payment due

7  under the Loan Agreement. (*Id.*) Thereafter, on numerous occasions by telephone, email, and

8  letter, Fanticola notified Padgett and the Property Owner of the default and otherwise demanded

9  payment of the full amount due under the Promissory Note and Loan Agreement. (*Id.*) Neither

10 Padgett nor the Property Owner made any further payments.

11     Fanticola hired Nevada Trust Deed Services ("Nevada Trust"), a reputable foreclosure

12 company, to substitute in as Trustee and complete the foreclosure sale. (Fanticola Decl. ¶ 7; *see*

13 *also* Ex. E, Substitution of Trustee; Declaration of Michele Dobar "Dobar Decl." ¶ 3.)

14     On or about November 15, 2019, Nevada Trust obtained a Trustee's Sale Guarantee

15 ("TSG") issued by First American Title Company that provided information as to the documents

16 of record affecting the Property and the proposed foreclosure sale. (Dobar Decl. ¶ 6; *see also* Ex.

17 A, TSG.) On December 16, 2019, Nevada Trust initiated the foreclosure sale by recording a

18 Notice of Breach and Election to Sell. (Dobar Decl. ¶ 7; *see also* Ex. B, Notice of Breach and

19 Election to Sell.) Nevada Trust sent by certified mail, return receipt requested, the Notice of

20 Breach and Election to Sell to 611 South (as the Property owner) and Brian Padgett (as the

21 guarantor) at the Property's address. (Dobar Decl. ¶ 8; *see also* Ex. C, Return Receipts.) Receipt

22 was confirmed by returned mailing cards. (*Id.*)

23     After a dispute over the priority of security interests was resolved in Fanticola's favor,[2]

24 and on or about March 31, 2021, Nevada Trust obtained a publication date down endorsement to

25 the TSG. (Dobar Decl. ¶ 9; *see also* Ex. D, TSG Endorsement.) Nevada Trust then recorded the

26 Notice of Sale on April 5, 2021. (Dobar Decl. ¶ 10; *see also* Ex. E, Notice of Sale.) Nevada Trust

27

28 [2] The priority of various security interests was fully resolved in a state court action filed by
Fanticola. *See Fanticola v. Hefetz*, Case No. A-20-810221-B, Eighth Judicial District, Clark
County, Nevada.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    sent by certified mail, return receipt requested, the Notice of Sale to 611 South (as the Trustor on

2    the Deed of Trust and the Property owner).  (Dobar Dec. ¶ 11; s*ee also* Ex. F, Return Receipts).

3    Padgett did not record a request for notice, and thus was not statutorily entitled to notice.  Even

4    so, Nevada Trust mailed the Notice of Sale by certified mail, return receipt requested, to Padgett

5    in his individual capacity.  (*Id.*)  Nevada Trust mailed the Notices of Sale to 611 South and Padgett

6    at the Property's address (611 South 6th Street, Las Vegas, Nevada 89101).  This was the last

7    known address and the same address used when mailing the Notice of Breach and Election to Sell,

8    which were received without issues.  (*Id.*)  This was also the address of record identified on the

9    TSG and subject to update by the TSG Endorsement as the last known address for 611 South and

10   Mr. Padgett.  (Dobar Decl. ¶ 12.)  The certified cards came back as undeliverable, with no

11   forwarding address. (Dobar Dec. ¶ 11; s*ee also* Ex. F, Return Receipts).  Nevada Trust also posted

12   the Notice of Sale in a public place in Clark County for 20 successive days before the sale date,

13   and published a copy of the notice three times, once each week for three consecutive weeks, in

14   the newspaper.  (Dobar Decl. ¶ 13; *see also* Ex. G, Affidavit of Posting).

15        The foreclosure sale was held on May 28, 2021, and Fanticola purchased the Property by

16   credit bidding the amount owed under his Promissory Note.  (Dobar Decl. ¶ 14; *see also* Ex. H,

17   Certificates of Postponement).  On June 1, 2021, Nevada Trust recorded the deed in the Clark

18   County Recorder's Office.  (Dobar Decl. ¶ 15; *see also* Ex. I, Deed).  Nevada Trust also posted

19   the Trustee's Deed Upon Sale on the Property within five days of recording.  (Dobar Decl. ¶ 16;

20   *see also* Ex. J, Affidavit of Posting).  On July 26, 2021, Padgett, in his individual capacity, filed a

21   Complaint against Fanticola that challenges the foreclosure sale for alleged defective notice. (ECF

22   No. 1.)  That same day, Padgett filed a noticed a lis pendens on the Property, clouding title and

23   effectively preventing any future sale.

24   **III.    LEGAL STANDARD**

25        After a plaintiff records a notice of lis pendens, the defendant may request a hearing on

26   the notice.  NRS 14.015.  Once the defendant requests a hearing and upon 15 days' notice, the

27   party who recorded the lis pendens "must appear at the hearing and, through affidavits and other

28   evidence which the court may permit, establish to the satisfaction of the court" that the lis pendens

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

is proper by proving each of five different elements required under NRS 14.015.  This statutory

procedure also applies when an action is pending in federal court.  *See* 28 U.S.C. § 1964 (providing

that federal courts look to state law regarding matters pertaining to lis pendens); *see also Bank of*

*Am., N.A. v. Bailey*, No. 2:14–CV–885 JCM GWF, 2015 WL 4073783, at *2 (D. Nev. July 6,

2015).   Padgett cannot meet any of the statutory elements prescribed by NRS 14.105 for the

reasons discussed below.  Cancellation and/or expungement of the lis pendens is therefore proper,

*see* NRS 14.015(5), and the Court should hold a hearing to expedite that expungement, NRS

14.015(2).

## IV.   ARGUMENT

### A.   Padgett Cannot Satisfy His Burden Under NRS 14.105.

To fully protect a defendant's due-process rights, NRS 14.015(2) provides a rigorous

expungement procedure that requires a plaintiff to satisfy, through affidavit and other evidence,

five elements.  Recognizing that a lis pendens can cause "substantial hardship to the property

owner before relief can be obtained," the Nevada Supreme Court has expressly affirmed that the

*plaintiff* filing the notice of lis pendens bears the burden during this procedure.  *Levinson v. Eighth*

*Judicial Dist. Ct.*, 109 Nev. 747, 751, 857 P.2d 18, 20 (1993).   Padgett must prove **all five**

**elements** to the court's satisfaction to defeat Fanticola's Motion to Expunge, including that (a)

the action affects the title or possession of the property; (b) the action was not brought in bad faith

or for an improper motive; (c) plaintiff will be able to perform any conditions precedent to the

relief sought in the action regarding the title or possession of the property; and (d) plaintiff can

establish that it would be injured by the transfer of any interest in the property before the action is

concluded.  NRS 14.015(2); *see also Levinson*, 109 Nev. at 750, 857 P.2d at 20.  The plaintiff

must *also* establish, "to the satisfaction of the court," the likelihood of success on the merits, or a

fair chance of success such that the hardship on the party recording the lis pendens is greater than

the hardship on the property owner.  NRS 14.015(3).  Padgett cannot satisfy this heavy burden.

/ / /

/ / /

/ / /

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1          *1. The Action Does Not Sufficiently Affect the Title or Possession of the Real
2              Property.*

3          The first element Padgett must prove is that "[t]he action is for the foreclosure of a

4   mortgage upon the real property described in the notice or affects the title or possession of the real

5   property described in the notice."   The foreclosure sale already occurred, so this is not a

6   foreclosure action.   Rather, based on Padgett's Complaint, the underlying issue appears to be

7   whether Fanticola properly noticed Padgett of the foreclosure.   Padgett must therefore prove that

8   this purported lack of notice affects the title or possession of the Property.

9          Padgett cannot do so.   As the Nevada Supreme Court has made clear, "[i]t is one thing to

10  say that there may be a colorable claim against real property and another to conclude that the claim

11  is such as to affect the title or the right to possession of the property within the meaning of the lis

12  pendens statute." *Levinson*, 109 Nev. at 751, 857 P.2d at 20 (internal quotation marks and citation

13  omitted).   The Nevada Supreme Court has further cautioned that an "[o]verbroad definition of 'an

14  action … affecting the title or the right of possession of real property' would invite abuse of lis

15  pendens." *Id.*

16         Here, Padgett is claiming that Fanticola did not provide sufficient notice, and as a result,

17  the foreclosure sale is void.   But Padgett nowhere alleges that notice to him would have in any

18  way altered Fanticola's right to the property.   Nor could he.   There is no dispute that Fanticola

19  properly exercised his rights.   Padgett also does not allege that notice to him would have in any

20  way altered *his own* rights.   Again, nor could he, as he does not have an ownership right to the

21  Property.   Without such allegations, the outcome of the Complaint simply does not affect the title

22  or possession of the Property.   Instead, Padgett's purported damages are primarily ***monetary***

23  damages, which the Nevada Supreme Court has expressly rejected as a basis for filing notice of a

24  lis pendens. *Levinson*, 109 Nev. at 750, 857 P.2d at 20 ("As a general proposition, lis pendens are

25  not appropriate instruments for use in promoting recoveries in actions for personal or money

26  judgments.").

27         Padgett might be relying on NRS 107.080(5), which allows a court to declare as void sales

28  made without proper notice under specific circumstances.   As discussed in more detail below,

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    these specific circumstances do not apply here.  But even if they did, two critical facts would

2    preclude this Court from declaring the foreclosure sale void.  First, Padgett admits in his

3    Complaint that he knew about the foreclosure sale before it occurred.  (ECF No. 1 at ¶¶ 20, 22,

4    29.)  In a similar situation, the Nevada Supreme Court found that because the plaintiff "admitted

5    at trial that he had actual knowledge of the default and the date of the foreclosure sale prior to its

6    commencement," defendant's failure to provide statutory notice did not void the foreclosure sale.

7    *Schleining v. Cap One, Inc.*, 130 Nev. 323, 330-31, 326 P.3d 4, 8-9 (2014).  Not only did Padgett

8    have actual notice of the foreclosure sale, but Nevada Trust recorded the Notice of Default and

9    Notice of Sale, so Padgett also had constructive notice.  In *West Sunset 2050 Trust v. Nationstar*

10   *Mortgage, LLC*, 134 Nev. 352, 354, 420 P.3d 1032, 1035 (2018), the Nevada Supreme Court

11   emphasized that the because the defendant homeowner's association recorded the notice of

12   default, the assignee of the original deed of trust beneficiary had constructive notice, which the

13   Court found sufficient.

14          Second, the Nevada Supreme Court has held that a person claiming entitlement to notice

15   must also allege prejudice resulting from the failure to mail notice. *U.S. Bank, Nat'l Ass'n ND v.*

16   *Res. Grp., LLC*, 135 Nev. 199, 202, 444 P.3d 442, 446 (2019).  In *U.S. Bank*, the Nevada Supreme

17   Court provided a list of factors a district court should consider before voiding a foreclosure sale,

18   including whether the party entitled to notice received timely notice by alternative means and

19   whether that party "suffered prejudice as a result" of deficient notice.  135 Nev. at 205, 444 P.3d

20   at 448.  Here, Padgett fails to allege prejudice resulting from the allegedly deficient notice.  He

21   does not explain what he would have done differently had he been provided with statutory notice,

22   or how that would have changed the outcome of the foreclosure sale.  This is fatal to his request

23   to void the foreclosure sale.  *See W. Sunset*, 134 Nev. at 354, 420 P.3d at 1035 (holding that

24   failure to allege prejudice resulting from defective statutory notice "dooms [a] claim that defective

25   notice invalidates the HOA sale"); *Turner v. Dewco Servs., Inc.*, 87 Nev. 14, 17, 479 P.2d 462,

26   465 (1971) (holding that defective notice "was not sufficiently prejudicial to void" a foreclosure

27   sale); *State Dep't of Motor Vehicles & Pub. Safety v. Pida*, 106 Nev. 897, 899, 803 P.2d 227, 228–

28   29 (1990) (upholding a revocation of driving privileges despite the State's failure to serve

1   statutorily required notice to the driver because the driver was not prejudiced by the defective

2   service).

3        Padgett's Complaint does not entitle him to the Property, and Padgett's requested relief

4   will not result in a possession, right, or title in the Property.  Put simply, Padgett does not have a

5   claim to the Property, so even if the foreclosure sale is declared void, he has nothing to gain or

6   lose.  Padgett's claim for defective notice therefore does not affect the title or possession of the

7   property.  And allowing such an attenuated claim to stand as the basis for a lis pendens would

8   unduly deprive Fanticola of his due-process and private-property rights.

9                *2. Padgett's Motives are Questionable.*

10       Padgett does not allege that he is entitled to possession of the Property.  On the contrary,

11  he admits that he signed a personal guaranty for a loan, granted Fanticola a deed of trust on the

12  Property, and that he has not repaid the loan.  (ECF No. 1 at ¶¶ 6-8.)  In a similarly perplexing

13  situation, a court in this district found that plaintiff's motives were questionable and concluded

14  that the plaintiff failed to meet its burden under NRS 14.015.  *Dalton v. CitiMortgage Inc.*, No.

15  3:09-cv-00534-LDG-VPC, 2011 WL 13307986, at * 2 (D. Nev. Nov. 30, 2011) ("Plaintiff's

16  motive here, at best, is questionable.").  The court based its decision in part on the fact that the

17  plaintiff had no ownership right in the subject property, finding that "Plaintiff's filing of the Lis

18  Pendens impedes SunTrust's contractual and statutory rights to the property, in a hope of

19  maintaining property for which Plaintiff has no rights." *Id.*

20       Like the plaintiff in *Dalton*, Padgett does not have any ownership right to Property.  He

21  admits as much in his Complaint.  This raises a significant question as to his motives for filing the

22  lis pendens.  More concerning, however, is that Padgett has not yet served Fanticola with the

23  Complaint.[3]  This creates a strong inference that Padgett's motive might be simply to cloud title,

24

25  [3] Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within 90 days of
26  filing a complaint.  The deadline by which Padgett could serve Fanticola was October 25, 2021.
    Fanticola recognizes that Padgett filed his Complaint pro se, but his status as pro se does not
    excuse him from complying with procedural rules. *Rodriguez v. Fiesta Palms, LLC*, 134 Nev. 654,
27  659, 428 P.3d 255, 259 (2018); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).  Fanticola also
    notes that Padgett used to be a practicing attorney in Nevada—as evidenced by the "Law Office
28  of Brian C. Padgett" watermark in the margin of his complaint—and therefore knows full well the
    requirement to serve a defendant.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    without actually pursuing the legal action.  These facts support a finding that Padgett brought his

2    action in bad faith or for an improper motive.

3             *3. Padgett Will Not Be Able to Perform the Conditions Precedent to the Requested*

4             *Relief.*

5             The third element Padgett must prove is that he "will be able to perform any conditions

6    precedent to the relief sought in the action insofar as it affects the title or possession of the real

7    property." NRS 14.015(2)(c).  Importantly, this element applies only to claims of relief that affect

8    the title or possession of the property.  Because none of Padgett's claims affect the title or

9    possession of the real property (as explained in Section IV.B.1), this element does not apply.  But

10   even if this Court disagrees, Padgett will not be able to satisfy the third element.

11            The only claims that *might* affect the title or possession of the Property are Padgett's first

12   and second claims for relief.  Although difficult to decipher, Padgett's first claim is for breach of

13   contract and he requests that "Defendant's foreclosure sale . . . be declared void." (ECF No. 1 at

14   ¶ 50.)  How this requested relief stems from a breach of contract is unclear.  But assuming Padgett

15   is somehow requesting that the Property be transferred back to him, Padgett would ***at the very***

16   ***least*** need to repay the loan in full.  Faced with a similar situation, a court in this district found

17   that a plaintiff could not satisfy this requirement "since he has already defaulted on his loan

18   agreement and no longer owns the Property."  *Dalton*, 2011 WL 13307986 at * 2.

19            Padgett's second claim is for wrongful foreclosure and he appears to request injunctive

20   relief, alleging that "[u]nless enjoined, the Plaintiff will suffer irreparable harm and will not have

21   an adequate remedy at law." (ECF No. 1 at ¶ 54.)  As explained in Section IV.B.1, Padgett does

22   not allege an ownership interest in the Property (and indeed has none), and thus will be unable to

23   allege any harm resulting from, the transfer of the Property.  Padgett has the burden to prove

24   otherwise during the hearing.

25            *4. Because Padgett Has No Interest in the Property, He Will Not be Injured by Any*

26            *Transfer of Interest.*

27            The fourth factor requires Padgett to prove that he would be "injured by any transfer of an

28   interest in the property before the action is concluded."  As discussed above, Padgett undisputedly

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966
McDONALD CARANO

1  defaulted on a loan that was secured by the Property, and therefore does not have an ownership

2  interest in the Property.  Accordingly, for the same reasons articulated in Fanticola's analysis of

3  the first and third elements (*see supra* Section IV.B.1 and 3), Padgett will be unable to prove this

4  element.

5                                        *5. Padgett is Not Likely to Prevail, Nor Does Not Have a Fair Chance of Success and*

6                                            *a Sufficiently Serious Injury.*

7          Finally, Padgett must prove, through affidavit or other evidence, that he will "likely prevail

8  in the action" *or* that he has a "fair chance of success on the merits" and the injury to him would

9  be "sufficiently serious that the hardship on him . . . in the event of a transfer would be greater

10  than the hardship on the defendant resulting from the notice of pendency."  NRS 14.015(3).

11  Padgett can prove neither.

12                             i.      <u>Padgett is Not Likely to Prevail.</u>

13          To prove that he will "likely" prevail under NRS 14.015(3)(a), Padgett has to prove that

14  him prevailing is "probable," or "reasonably expected."  *Likely*, Black's Law Dictionary (11th ed.

15  2019).  His deficient Complaint precludes him from satisfying this burden.  Not only did he fail

16  to allege the necessary facts, but he failed to plead the required elements of his causes of action.

17  For example, in his breach-of-contract claim, Padgett does not reference a contract, nor does he

18  allege that any such contract was breached.  (*See* ECF No. 1 at ¶¶ 45-51.)   This alone is grounds

19  for dismissal.  *See Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000) (holding that to

20  prevail on contract-based claims, a plaintiff must plead a valid and existing contract between itself

21  and the defendant); *LN Mgmt. LLC, Series Garden N. Drive v. Garden Park Townhouse Ass'n*,

22  No. 79754-COA, 2021 WL 1156549 (Nev. App. Mar. 25, 2021) ("With respect to [plaintiff's]

23  allegations concerning breach of contract, the district court properly dismissed that claim, as

24  [plaintiff] failed to allege the existence of an actual contract between itself and the HOA."); *Dog*

25  *Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, Case No. 220-cv-01459-GMN-DJA, 2021 WL

26  4395042, at *2 (D. Nev. Sept. 24, 2021) (dismissing plaintiff's breach-of-contract claims where

27  plaintiff "fail[ed] to identify the alleged contract").  Yet instead of pleading the necessary elements

28  for his causes of action, Padgett accuses Fanticola of failing to provide him notice and then alleges

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    that he is likely to succeed because "public interest favors Plaintiff and the administration of

2    substantial compliance with NRS Chapter 107." (ECF No. 1 at ¶ 49.)  While Rule 8's requirement

3    for a "short and plain statement" does not require detailed factual allegations, it demands more

4    than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Fed.

5    R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

6          Setting aside the Complaint's fatal deficiencies, Padgett still is not likely to prevail on the

7    merits of his claims because NRS Chapter 107 does not entitle him to notice.  Under NRS 107.080,

8    two documents must be recorded and mailed (registered or certified mail, return receipt requested

9    and with postage prepaid) before a foreclosure sale.  First, the trustee must file a notice of breach

10   and election to sell, sometimes referred to as a notice of *default* and election to sell ("NOD").

11   NRS 107.080(2)(b).  The NOD provides a description of the default and provides the defaulting

12   party with an opportunity to cure the default.  *Id.*  The trustee must mail the NOD to:

13       (a)  the grantor-borrower, NRS 17.080(3);
         (b)  the currently property owner (if different than the borrower), NRS 17.080(3);
14       (c)  each person who has recorded a request for notice, NRS 17.090(2);
         (d)  each person with a subordinated interest, NRS 17.090(2); and
15       (e)  the guarantor or surety of the debt, NRS 17.095(1).

16

17         Nevada Trust fully complied with these requirements. On December 16, 2019, and relying

18   on the information provided in the TSG, Nevada Trust mailed the NOD to 611 South (the Property

19   owner) and Brian Padgett (the guarantor) at the Property's address.  (Dobar Decl. ¶¶ 6-8.)  Receipt

20   was confirmed by returned mailing cards.  (Dobar Decl. ¶ 8.; *see also* Ex. C.)

21         The second document that needs to be recorded and mailed is the Notice of Sale ("NOS"),

22   which provides the time and place of the sale.  NRS 17.080(4).  The list of people entitled to the

23   NOS is different than the list of people entitled to the NOD.  Those entitled to the NOS include:

24       (a)  the trustor on the deed of trust, NRS 17.080(4);
         (b)  each person who has recorded a request for notice, NRS 17.090(2); and
25       (c)  each person with a subordinated interest, NRS 17.090(2).

26

27         On April 5, 2021, Nevada Trust mailed by certified mail, return receipt requested, the

28   Notice    of    Sale    to    611    South    (the    trustor),    as    required    under    NRS    17.080(4).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

(Dobar Decl. ¶¶ 10-11; *see also* Exs. E and F).  Padgett, however, was not entitled to notice. Critically, NRS 17.095(1), which requires the trustee to mail a notice of default to the guarantor, does ***not*** apply to notices of sale.[4]  And as stated above, Padgett failed to record a request for notice, and therefore was not entitled to notice under NRS 17.090(2).  *See U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 135 Nev. 199, 202, 444 P.3d 442, 446 (2019) ("If U.S. Bank had filed a request for notices of default and sale under NRS 107.090(2), it would have been entitled to receive notice of default at the address specified in the request, but it did not. Absent specific request, when a deed of trust is foreclosed, the notices of default and sale must be mailed to subordinate lienholders in a manner consistent with NRS 107.080, which sets forth the procedure for mailing notices to the property owner.").  Padgett, in his individual capacity, was therefore not entitled to the Notice of Sale.

Even if Padgett somehow escapes this conclusion and can prove that despite the clear and unambiguous statutory language, he was nonetheless entitled to notice, Nevada Trust complied with NRS 107.080's notice requirement.  Under NRS 107.080(4)(a), notice must be sent "to the last known address of the trustor and any other person entitled to such notice pursuant to this section."  Nevada Trust mailed the Notice of Sale to 611 South and Padgett at 611 South 6th Street, Las Vegas, Nevada 89101, which was the entity's last known address.  (Dobar Decl. ¶ 11-12.)  Nevada Trust therefore fully complied with NRS Chapter 107.[5]

---

[4] NRS 17.095(1) provides:

> The ***notice of default*** required by NRS 107.080 must also be sent by registered or certified mail, return receipt requested and with postage prepaid or, if authorized by the parties, by electronic transmission to each guarantor or surety of the debt. If the address of the guarantor or surety is unknown, the notice must be sent to the address of the trust property. Failure to give the notice, except as otherwise provided in subsection 3, releases the guarantor or surety from his or her obligation to the beneficiary, but does not affect the validity of a sale conducted pursuant to NRS 107.080 or the obligation of any guarantor or surety to whom the notice was properly given.

(Emphasis added).

[5] Nevada Trust also complied with NRS 107.080(4)(b)'s and (c)'s requirement for posting and publication.  Specifically, Nevada Trust posted the Notice of Sale in a public place in Clark County for 20 successive days before the sale date, and published a copy of the notice three times, once each week for three consecutive weeks, in the newspaper.  (Dobar Decl. ¶ 13; *see also* Ex. G.)  Padgett does not dispute this in his Complaint.  (*See generally* ECF No. 1.)

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    In the event that Nevada Trust did not fully comply with NRS Chapter 107, NRS 17.080

2    requires only substantial compliance.  *See* NRS 17.080(5) (providing a remedy only if the trustee

3    "does not substantially comply with the provisions of this section").  "In other words, the

4    Legislature specifically envisioned that the purposes behind NRS 107.080's notice and timing

5    requirements could be achieved even if these requirements were not strictly adhered to."

6    *Schleining v. Cap One, Inc.*, 130 Nev. 323, 329, 326 P.3d 4, 8 (2014).  "When substantial

7    compliance is sufficient, a party's literal noncompliance with a rule is excused provided that the

8    party complies with respect to the substance essential to every reasonable objective of the rule."

9    *Markowitz v. Saxon Special Servicing*, 129 Nev. 660, 665, 310 P.3d 569, 572 (2013) (internal

10   quotation marks omitted).  At the very least, Nevada Trust substantially complied with NRS

11   17.080 when it mailed, by certified mail and return receipt requested, the Notice of Sale to 611

12   South and Padgett at the Property's address.  Padgett was already on notice that Fanticola was

13   planning a foreclosure sale because Padgett acknowledged receipt of the Notice of Breach and

14   Election to Sell back in December 2019.  Nevada Trust sent the Notice of Sale to the same address

15   it successfully sent the Notice of Breach and Election to Sell.  Nevada Trust also posted and

16   publicized the sale, which Padgett does not dispute.  These actions serve NRS Chapter 107's

17   objectives, and thus satisfy NRS 17.080's requirement for substantial compliance.

18   Based on the above analysis, Padgett will be unable to prove, through affidavit or other

19   evidence, that he will "likely" prevail under NRS 14.015(3)(a).

20
21       ii.  <u>Padgett Does Not Have a Fair Chance of Success and a Sufficiently Serious Injury.</u>

22   Padgett also cannot satisfy the "fair chance of success on the merits" standard under NRS

23   14.015(3)(b), which requires this Court to balance each party's hardships.  For the same reasons

24   as above, Padgett has ***no*** chance of success, and therefore already fails to meet this standard.  But

25   even if he could convince this Court that he has at least a "fair chance of success on the merits"

26   (which the above analysis precludes), NRS 14.015(3)(b) ***also*** requires Padgett to prove a

27   sufficiently serious injury that imposes a hardship that, upon balance, outweighs Fanticola's

28   hardship from the lis pendens.  Because Padgett has no ownership right in the Property, he will

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

suffer no harm if Fanticola transfers title through a future sale.  Fanticola, however, continues to suffer severe hardship because the lis pendens effectively precludes a sale of the Property, which restricts his right to the use, enjoyment, and disposition of the Property and denies him due process.  The balancing of hardships falls strongly in favor of expunging the lis pendens.

Critically, Padgett must satisfy **all five elements** to survive this Motion to Expunge. Fanticola maintains that Padgett fails to satisfy his burden on all elements, but even if this Court disagrees with Fanticola's analysis on all but one of the elements, the lis pendens must be cancelled or expunged.

### B.  Alternatively, This Court Should Require Padgett to File a Bond as Security.

For the reasons identified above, Padgett is not likely to prevail on the claims haphazardly asserted in his Complaint.  Despite this, a cloud remains on Fanticola's title, which prevents him from exercising his property rights.  Cancellation and/or expungement of the lis pendens is therefore appropriate under NRS 14.015(5).  If this Court disagrees and decides not to order the cancellation and/or expungement of the lis pendens, NRS 14.015(6) authorizes the Court to require Padgett to file a bond as "adequate security."  Because of the severe hardship Fanticola requests, and as an alternative to cancellation and/or expungement, Fanticola requests that this Court exercise its discretion impose a bond in an amount no less than $100,000.

### C.  A Hearing on the Motion to Expunge is Necessary and Appropriate.

After a notice of lis pendens has been recorded, NRS 14.015 allows a defendant to request that the court hold a hearing on the notice on 15 days' notice to the plaintiff.  NRS 14.015(2).  The hearing must be set as soon as is practicable, taking precedence over all other civil matters except a motion for a preliminary injunction.  NRS 14.015(1).  This case shows why this provision exists: an expedited hearing is necessary to ensure that Fanticola can freely exercise his property rights. Fanticola is in the process of listing the Property for sale, but cannot effectively do so while the improper lis pendens clouds the title.  Fanticola therefore requests that this Court hold a hearing regarding the propriety of the lis pendens as soon as practicable, and upon 15 days' notice to Padgett, as statutorily required.

1

**V.     CONCLUSION**

2

Fanticola respectfully requests that this Court hold a hearing on Fanticola's Motion to

3

Expunge as soon as practicable, and upon 15 days' notice to Padgett.  At that hearing, Fanticola

4

will prove that Padgett cannot satisfy the elements of NRS 14.015(2) and (3).  Accordingly,

5

Fanticola also respectfully requests that, following the hearing, this Court order the cancellation

6

and/or expungement of the lis pendens.

7

DATED: November 5th, 2021.

8

MCDONALD CARANO LLP

9

By: */s/ Jeff Silvestri*

10

Jeff Silvestri (NSBN 5779)
Jane Susskind, Esq. (NSBN 15099)

11

2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

12

jsilvestri@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

13

*Attorneys for Defendant Anthony Fanticola*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on or about the 5th day of November, 2021, a true and correct copy of the foregoing **EMERGENCY MOTION TO CANCEL AND/OR EXPUNGE LIS PENDENS** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ CaraMia Gerard*
An employee of McDonald Carano LLP